23-1080, is it Keith Schiebel v. Schoharie Central School District. And we have Mr. Cook for the appellant. And I understand you would like to reserve two minutes for rebuttal, is that right? Yes, your honor, thank you. And did I get the pronunciation of your client's name right? That's right, Schiebel, correct. Very good, you may proceed.  Good morning, and may it please the court. This court should reverse the dismissal of Mr. Schiebel's complaint. And there are two errors that I would like to address. First of all, the district court committed reversible error when it held that the bias that Mr. Schiebel had plausibly alleged in his complaint could not plausibly be because of his sex. And then the district court committed a second error when it dismissed that complaint without giving him an opportunity to amend his complaint to address those pleading deficiencies that the court found. The issue that I want to start with is that the dispute before the court is relatively narrow. Given the allegations of a complaint that must be taken as true, everyone agrees that Mr. Schiebel was falsely accused of touching a female student. Everyone agrees that the school district reached the wrong conclusion when it found that that accusation- Hang on, you think your opponent's going to get up there and say that he agrees that he was falsely accused? Given the allegations of a complaint, yes. When he comes up, that's your prediction. He's going to say he agrees with that? I believe that that was- We'll hear from him, but just- I think that's correct, Your Honor, and he will, of course, correct me. I have a position that it's clearly, that's clearly the way the complaint must be read, but all right. Just be careful before imputing something to your adversary. I understand, that is what the district court found. The district court did find that he was falsely accused, and that the school district reached the wrong conclusion when it held that that accusation was founded. And I think everybody agrees that the complaint also plausibly alleges that the investigatory and adjudicatory process did demonstrate bias against Mr. Schieble. The only real issue and dispute is whether it is plausible that that bias was because of his sex, at least in- So why don't you just, in terms of efficiency and- Yeah. Tell us very specifically which allegations allow for the minimally plausible inference of gender-based bias. Just give us bullet points, and then we can talk about them. Well, first of all, the significant procedural irregularities. This court in the St. John's case went ahead and acknowledged that procedural irregularities alone, in some cases, can be enough to give rise to a plausible inference of gender bias. So just to get ourselves a list. Yes. You can come back to some of these points, but give us the comprehensive list. You've got a significant procedural irregularities. What's your next bullet point that demonstrates gender bias in your view? The fact that we have an accusation by a female student against a male contractor investigated by a female title nine investigator. Well, those are facts, but- Correct. But how does that demonstrate bias on the basis of sex, if there is bias? Yeah, the totality of the circumstances. You can't look at just each fact on its own. You have to- Let me get to the point. My question is, if you've got a female accuser and a male accused, is that enough where there's deficiencies? Just the fact of the gender that's between the accused and the accuser. I think that's what this court said in St. John's, that it may be. If the irregularities are- Is it possible that the irregularities might be enough? I mean, why would that be? Is that because if the irregularities are so severe, we think that the school district was deliberately indifferent to the truth or falsity of the allegations and just wanted to fire the person or expel a student or whatever. Or the deliberate indifference, the same way it works, if they're deliberate indifferent when there's a victim's rights being violated, would amount to discrimination. Yes, that's right, you're right. But if it's not so irregular and outrageous that it amounts to deliberate indifference, then we say that you have to have some kind of allegation to show there's some evidence of sex-based bias. Right, right. And the allegations of sex-based bias, in this case, I thought you might say, are the comments of the Title IX coordinator. Yes. Might indicate that, so why don't you explain why that indicates sex-based bias? Yes, because those comments, I think in our view, pretty clearly demonstrate invidious stereotypes. The Title IX investigator assumed that because Mr. Schiebel was a male accused of sexual misconduct, he must therefore be guilty. Based on the stereotype- But she didn't say that, right? She didn't say because you're a man, so why, so is it possible to understand her comments as being like, I'm afraid of you because you might assault me, demonstrating a kind of bias against everybody accused of the so-called anti-respondent bias. Because she just thinks that accusations are generally true, and so she should, that anybody who's accused of it is guilty. At that point, we're choosing between two different motivations, and that is a function for a jury to decide. You just said a moment ago that deliberate indifference to the truth or falsity of the allegations would amount to sex-based bias anyway. It can be, it can be, yes. So I understand you're saying two plausible, but even if the plausible one were, she just thinks everybody accused is guilty and doesn't care about the truth or falsity allegations. Wouldn't that still be a sex-based bias? Yes, it would be. Okay. But in any event, if you have a, you don't have a smoking gun on the sexual thing. Exactly right, yeah. If you have a huge bias, a bias against accused, and a possible sex-based going together, under the test, minimally plausible, inference. We don't, it's not an either or situation. It can be, you can have both, and then there's a possible inference that the jury could draw. That's exactly right, Your Honor. We don't have to prove that this is the most plausible motivation. We only have to show that it is a plausible motivation. Right, right. So it's not, we're not comparing the motivations. Exactly right, Your Honor. Is this, I mean, maybe this is getting too hair splitting, but what's the difference between comparing the plausibility of two possible motivations to determine what's minimally plausible inference, and the motivating factor test, which suggests that you can be liable under Title IX if you had more than one motivation, at least one of which was sex-based. So let's say, for example, every time there was an investigation on Wednesday, the investigator decided everyone should be guilty, and everyone on Tuesday innocent, and this happened to be a Wednesday case, right? But if there was also a sex-based motivation, then that's enough under Title IX. Right. But what's the difference between, because don't we have to compare the plausibility of allegations under things like Big Bell? Not in discrimination cases, and the reason for that is because this court explained in Little John that the Madonna-Douglas burden shifting framework lowers the Twombly-Iqbal standard below what it would normally be in a non-discrimination case, because of the temporary presumption that applies in favor of discrimination. So we did say that in Little John, right, but then in the St. John's case, I mean, I disagreed with them, but didn't the court basically apply the Iqbal standard? That's not how I read it, no, Your Honor. And the reason for that is because the reason for the decision in St. John's, and with all respect to your dissent, I read it a little bit differently. What they said was he didn't even plausibly allege bias. He only alleged some articulable doubt as to the outcome, but he didn't get to the point where he alleged that there was actually bias against him. So you didn't even get to the second question. No, the court does say, well, maybe it was a sex-based bias, but we think that there's a more plausible explanation, which is the credibility determinations. There is some language to that effect. I think that that language is dicta, because they said that he didn't even allege significant procedural irregularities in the first place. And also, even if it's a departure from Little John, I guess you would say that a later panel can't actually- Exactly right. Overrule Little John anyway, so- Exactly right. Even if they misapplied it, in that case, it wouldn't be, the earlier case would be binding. Yeah, yeah, exactly right, and I want to also point out that if you look at Vega, which further explained the Little John standard, I mean, if we were to apply, in Little John, they said that the fact that a black employee was replaced with a white employee by itself was enough to raise a plausible inference of racial bias. If they didn't require any of this stuff about, well, you know, is there evidence to show that there was something in the air of criticism? Yeah, right. So in cases where we say that there is allegations that show it's a sex-based bias, we say there's like some pressure on the university. It might be enough that there was the dear colleague letter from the Department of Education, or there were some media criticisms, or whatever. So the fact that you have here a statement from the relevant official in the school district, you might think that's stronger evidence of a sex-based bias. Exactly right. Assuming that the plausible understanding of those comments are reflective of sex-based bias. And I also think it's important to know that in St. John's, this court did acknowledge, and they cited the Sixth Circus decision in Oberlin College, that procedural irregularities, even without any pressure on the university, if there might be enough, can't be enough. Right, so that's what I was going back to talking to you about, which is why that would be the case, right? So we do say, in cases where a university or a school district is deliberately indifferent to an incident of sexual harassment or assault, and they just don't do anything about it, that's sex discrimination. And you don't have to separately show the reason they're doing it is because they're biased. Right. And so since we've said that accusations of sexual harassment work the same way, right? So if a school district or a university just is clearly deliberately indifferent to the truth or falsity of the accusations, it might work the same way in the other direction. Right. But in either case, if it's not so irregular that it would amount to deliberate indifference, you could show allegations of actual bias on the part of the university. Exactly right, yes. So I guess your position is that you have both here. You think that it was so deficient that it rises to the level of sex-based discrimination. But even if we didn't think that, you think that the comments of the school board coordinator show that. That's exactly right, your honor. And I think it's important also to remember that if you look back at Little John and Vega, they talk about the fact that discrimination is easily concealed. That you're rarely going to have the kind of evidence that would show that there was this significant pressure or whatever. There is a significant difference between universities who, these issues may be in the news with the university. And we're talking about, in this case, a rural school district. It's going to be much, much more difficult for a plaintiff to try to come up with some sort of media storm or something about a school district. We're talking about an elementary school. So I think it's a little bit of a bad fit to apply this test that, well, I would say it's not even a test, but apply this factor that they found in a couple of cases involving universities was enough. And say that, therefore, that is the only way to show bias, and it applies- I'm sorry, could you just be specific? I guess I'm not exactly following your argument. What is the factor that you contend has been applied with universities that should not be applied with elementary schools? Just to be clear. The fact, in the Menneker case, St. John's, and the Columbia case, they said that this evidence of additional pressure on the university. Criticism against- That's general pressure against accused. Yes, yes. You're just saying we shouldn't understand those cases to say the only evidence of sex-based bias would be external pressure. But that's also true with universities, right? I mean, I don't think we've ever said that you need that factor. I don't either. That's right, you're right. And I would assume that you would have come in here and sort of did with your colleague letter and say if there were pressure on the elementary school, that would be evidence in your favor, right? It would be, exactly. I guess I'm not really seeing the difference between universities and elementary schools. It seems to me that if there's some pressure, external pressure, that's evidence that can contribute toward an inference of gender bias. And if there's none, then that factor just doesn't influence anything. Right, I'm only cautioning- You could still find liability on this. Correct. Even if there wasn't pressure. Correct, exactly right. Under the deliberate indifference approach. Exactly right, exactly right. It seems to me you're sort of fighting a straw man here. It seems like you're setting up an argument saying that we've required that in universities and therefore we shouldn't require it here. But I don't think we've ever said we require it for universities. That's exactly right. I'm just cautioning the court against that because I think that that may be the argument that the other side is saying. It can't be that that's a requirement because obviously if a plaintiff had evidence where the decision making official of the recipient says I'm doing this because I hate women or I hate men, obviously that would be evidence of sex-based bias. So it can't possibly be that the only possible evidence of sex-based bias is external pressure. On the narrow point about the Dear Colleague letter, I mean the Dear Colleague letter had been rescinded by the time of the conduct in this case, right? So that's not really, does that still count as external pressure, do you think? I think it contributes to a general sense of pressure on school officials at all levels that you need to take these things seriously. It's part of a whole mosaic, to use the word that the court used in Vega. It's not just public outrage as a result of the Me Too movement. That kind of thing, an environment in which we've got to stop this, stop sexual predation by men. Exactly. Yeah, that is, I would say- That's public, that's out there, it's not directed at the school, it's just generated. Yeah. Is that part of it? I think that a jury could look at that and say that that contributed to the motivation. So I think that at the pleading stage, the court should allow those types of allegations to be enough. What is the strongest proof you have of deliberate indifference here? I think that the numerous procedural irregularities. Well, also isn't the Bocas decision, B-O-C-V-S decision earlier to suspend him or to not do business with him long before any investigation? Yeah, before the investigation. Does that indicate that they've reached an Alice in Wonderland conclusion? Absolutely, it indicates that they had already determined their preferred outcome. And it didn't matter what they- The BOCES program did, but is the BOCES program's conduct attributable to the school district? In this case, I'd say it is because they were taking a cue from the school district. They said- What was the cue? They said the reason for this was the incident at the school. No, that's the incident though, that's the misconduct. Yeah. So, sorry, so if the way it happened was the school district informed BOCES that there had been this accusation. And BOCES said, well, well, just an accusation alone is going to lead us to suspend him. Maybe you think that they're overreacting or it's unreasonable conduct, but I don't know if that shows that the school district is committing discrimination, right? Well, unless you could show somehow the decision making of them overlap. I mean, I guess BOCES is a consortium of school districts, but I don't know if there's an allegation to that effect. If we are going to draw inferences in favor of the plaintiff, I think we have to allow a jury to infer that when BOCES took that decision, they were doing it because the school district- So you think that the inference should be that the school district basically told them that he was guilty. Exactly right. Not just told them about the accusation. Yes. Either that or they were reacting to the public atmosphere, which is- Also possible. Some sort of inference can be drawn on that basis. That's right, your honor. Can I go just back to, you said earlier that taking the allegations of the complaint as true, one has to conclude that he was falsely accused or that he was erroneously adjudged to be responsible. Right. Is that because, I mean, there's this question about how to read the school district's definition of sexual harassment, which might say that even an unintentional or accidental touching might count as sexual harassment. Because it says, unwelcome conduct of a sexual nature that has the purpose or effect of causing, interfering with access to educational programs. So is your position that that actually does require intentional conduct or that the definition of the school district is unreasonable because it defines innocent conduct as guilty conduct or both? Well, I would say both. The reason for that is, although it doesn't expressly give an intent requirement, it says conduct that is sexual in nature. And I would say that an inadvertent brushing up against somebody or bumping into somebody is not sexual in nature. It's just not. Well, so, but it does say purpose or effect, so effect could be part of that. If that, so the recipient of the touching believes that this was a sexual act. But on the other hand, how could we condone liability for something that's purely accidental because somebody's paying a price and it's the accused. Exactly, your honor, that's exactly right. And- But are you contending that that manifests gender bias? That if they adopt, if the school district has a strict policy that purposeful or unintentional conduct, if it is either way of a sexual nature, right? You brush up against the private parts of a student in a meaningful way, they're going to fire you. It's sort of a strict liability thing. How does that manifest gender bias? Well, by itself it wouldn't, but the fact that they have this policy and then they interpret it in such a way that they say even innocent conduct, we're going to- Right, so I guess you would have two arguments, right? So if you think that the regular understanding of the definition would be that it has to be intentional conduct. To interpret it to encompass unintentional conduct might manifest a bias because it just means you want to find everybody guilty and you're indifferent to the truth of the allegations. But I suppose they could say that actually they do want to have a strict liability regime and maybe they have some evidence that they've enforced it that way in the past. I don't know if we know that or not. Maybe you don't know that on a motion to dismiss. Exactly. But then I guess you could argue that if they define the rules about sexual harassment such that everybody who's accused is automatically guilty because they've defined it in such a low way, that might also- That's deliberate indifference. Yeah, yeah. And I think particularly if you've got a situation where you interpret it one way, generally, but then when you've got a male accused by a female student and you interpret it the strict liability, that's even more. Have you alleged that? Have you alleged that it's been interpreted in different ways with different people? I believe that you can infer that from the allegations. Give me a paragraph of your complaint. I don't have that in front of me, your honor. I think- That's what we're working off, right? If it's not in the complaint, we're not going to make it up out of thin air. So, I guess let me come back, even if you don't remember a paragraph number. Is there a place, and you can just paraphrase it without a paragraph number, where you have alleged that the school district has applied this sexual harassment policy differently with respect to anybody else? I think you can infer that. We did not explicitly allege that. Give me a fact from which I can infer it, that you alleged. The fact that we allege that this, well, we allege that the evidence was weighted so heavily in favor of Mr. Sheeble and that they went ahead and did it anyway. No, no, no, that's as you're saying, that they were unfair here. My question is, I mean, look, I'm assuming Scohare is a really small place. Exactly right, your honor. I'm assuming not many cases come up. Maybe you have no comparators. We do not. Okay, so then, if you're admitting there are no comparators, then it seems like you're admitting that you don't have any inference that he has been treated differently from other people. Or he has had these rules applied more strictly to him than they have been applied to other people. That is different from saying that he has had them applied to him in a way that the rules themselves do not support. But now those are two different arguments. No, I understand that, your honor, and you're right. And it is true that we did not expressly allege that. Well, you don't have allegations of actual prior cases that were treated differently. But it does seem like you do allege that the natural way to read this would be to cover intentional conduct. That's exactly it. And it didn't commit intentional conduct, and therefore, deciding that he's responsible is a manifestation of bias, which the inference there is that either they're interpreting- They would not have done that in another case. Either they're interpreting it tendentiously, and they wouldn't have done it in another case, or they just have a biased definition, and that also would manifest bias. But those would be inferences from the complaint. Why don't we do this, unless there are any other questions right now from the panel. Why don't we hear from Counsel Bappley, and then Mr. Cook will hear from you for two minutes of rebuttal. Thank you, your honor. Okay, so Mr., is it Maynard? Maynard. Maynard. And if you will, could you, if you remember, back to the very beginning, I asked your colleague, he said he was pretty sure that he would agree with, and I can't remember if I'm going to rephrase it, the proposition exactly that Mr. Schiebel was falsely accused. Is that actually something that your side agrees? Well, good morning, your honor, and may it please the court. And absolutely not, I wouldn't agree with that. That's what I thought from the briefing. And is that because you think that the definition of sexual harassment encompasses unintentional conduct or accidental grazing, or your position is that he was responsible for an intentional touching? So, if I might step back for a moment, your honor. I want to be clear about what the allegation was, because I think there's some confusion. The allegation by the student is not that Mr. Schiebel grazed against her. The allegation by an underage female student was that he touched her buttocks and breasts. Right, so the allegation was that he reached from behind and touched, but then the school district, as the evidence for why he's responsible, says, well, he admitted that he reached into a cupboard or whatever and might have had to reach around the student, and that supports the truth of the allegation. But if you think that's evidence for the truth of the allegation, that he admitted it, the only thing he admitted to was the possibility that maybe in reaching to the cupboard, he might have accidentally grazed the student, right? So it's the reliance on the admission that suggests that the school district is saying that an accidental touching would fall within the definition. So I think there's a difference here, and I think it was touched upon while my colleague was speaking. And that's that the standard in the district's policy, and I'm quoting here, is that the conduct substantially or unreasonably interferes with the student's participation in an educational or extracurricular activity. You don't need a sexual assault. You don't need the kinds of conduct that might create criminal liability. It also says to be unwelcome conduct of a sexual nature, right? Yes, and so in this instance- If you accidentally graze somebody reaching into a cabinet, is that a touching of a, is that conduct of a sexual nature? When you graze someone's private parts, yes it is. So you think actually the school district does have a kind of strict liability regime, that even if you accidentally bump into somebody, if you touch their private parts, then it's sexual harassment and that person can be expelled or fired. I don't think that the district has that policy. I think the rules of the federal government, Title VII, would also mandate, if you touch someone's private parts, that constitutes sexual harassment. Well, if you do it intentionally, but I mean, if you bump into somebody, I'm not sure that what you're saying would be accurate. I think if you bump into someone, but that's, I think we're reading too much in respectfully. That's what this case is largely about. Well, I think what we- A fair reading of this case would be that he, if anything, he was accidental. He even says that he couldn't remember anything. And then he's trying to be helpful to the investigators. He says, well, this might have happened. But even then, I see that your side takes that as an admission, a clear admission. But it's just a possibility that he offered, and of course, that was enough for the investigator, because you shut down the investigation as soon as you said that. At that point, one of the things here is this case and the allegation and the underlying sexual harassment investigation essentially comes down to a he said, she said situation. The investigator- It doesn't, there's a witness to it. Well, there was- There's a student there. I didn't see a thing. I would disagree with the statement that this is a witness, as opposed to someone who was in the room for some or all at the same time. It's not a he said, she said situation until we understand what is trying to be proved, right? So it's true that he said something and she said something, but there's these two competing definitions of what would amount to sexual harassment. And so I guess the question that we're asking you is, does the school district think that an accidental touching would show sexual harassment or that it would need to be intentional? So I want to know what the school district actually believes he was found responsible for. Well, the school district believes and found that he was responsible for violation of district policy, which as he quoted before. And that's 7551, that's what we've been talking about, the purpose or effect. Correct. Let me just put it, sorry, sorry, I didn't mean to. Well, I think this is following up, and I'm not quite sure why you were backing up to federal policy, because we've got, hang on, we've got the board policy 7551, right? And I take it because that's what was cited in the school district's papers, that's what he was disciplined for violating, right? Correct. And that I thought the idea behind the finding was that you don't have to figure out whether what he did is intentional or not. Because the fact is that the conduct occurred, the intention is not relevant. Because upon a finding that this contact, this physical contact occurred, it did have the effect. Am I properly stating, am I properly understanding what the school district's finding was? That's exactly what the school district's finding was. Okay. So, sorry, so just, so you're saying that it doesn't matter if it's intentional. So if in fact what he did was he reached into a cupboard and accidentally raised a student who was standing in between him and the cupboard. If it touched a, if he grazed a private part and the student felt uncomfortable, that would be sexual harassment under the policy. Yes, it would. Even if it's accidental. That would be correct. Okay, now, why is that a reasonable definition of sexual harassment? I mean, usually we think there needs to be some kind of intention, right? Well, I think that, respectfully, that doesn't speak to the issue necessarily of whether there's a gender bias. But that's- No, no, no, back up, just stick with the question. The question of whether or not that's a reasonable, that's the choice that the district has made with respect to what constitutes sexual harassment, what behavior it is willing to tolerate. So your position is that if students in the hallway bumped into each other, if one bumped into the other one and grazed a private part, that would be sexual harassment, the school district could expel the bumper. It could discipline, I don't know that it would constitute, given the factual circumstances, I don't know that it would constitute discipline up to expulsion. There's other provisions of the education law that would require- Well, you're going to fire, and they ban him from campus indefinitely, right? I mean, that's a pretty severe sanction. So it seems like you take, this is your interpretation. It seems like you take it very seriously. We would take sexual harassment very seriously. And Mr. Sheeble is also, he was a visitor. He's not somebody who is typically on the campus. He's also not a student. But you don't draw that distinction. Student discipline would be different. You don't draw that distinction. In a school, a small school, and particularly a secondary school, people are bumping into each other all the time, people are closing lockers, getting the things, turning around, maybe bumping into somebody. And all of those are potential sexual harassment cases. If they happen to bump into somebody and touch a what would otherwise be a private part or breast or butt or something, that sort of thing. Total excellence, how can that be a legitimate policy? I mean, how can that be actionable? Well- I mean, you could set up a policy that any touch could be sexual, and therefore, that's a basis. And that's, if I may, that's why there are investigations. Somebody makes an allegation, there's an investigation conducted. And the investigator reaches whatever decision, and then that's appealed. Here, there was also an appeal made by Mr. Sheeble that was considered by the district superintendent, who's male, who upheld the finding of the investigator. So- I'm just wondering whether the policy itself is in accordance with Title IX. I think the policy is certainly in line with Title IX. The question of whether or not it's the policy I would adopt if I were on the school board is certainly fair, but it doesn't speak to the issue of whether or not the district engaged in some sort of gender bias, or specifically this investigator. The investigator took the policy as it was written. Yeah, but we're not talking about the investigator, it might be that the school district is the defendant, right? So if the school district has a biased policy, then it's guilty, it has bias, right? So it's not only, so the comments by the investigator is one piece of evidence about why the school district might have a sex-based bias. But the policy might also be that. I mean, if the school district had a policy that just said, everybody accused of sexual harassment shall automatically be fired or expelled, and we don't do any investigation. Would that be a permissible policy? With respect to students, I would say no. With respect to employees, I'd say no, because they have due process rights under the education law. So, or under the civil service law, depending on what type of employee or their contract. As we just said, right, in St. John's University, there was a disagreement about some of the standards there. But everybody in that case agreed that there are at least some circumstances in which the procedural irregularities could be so glaring that it itself would show bias, right? So if a school district is just completely indifferent to the truth or falsity of the allegations and just expels or fires everybody accused of sexual harassment, that would indicate bias. I mean, we seem to have said that, right? I think the answer to that would probably be yes, and I would say that's not the case here. You're saying it doesn't apply in this case. Right, that's not the case here, but I think generally, yeah. So the hypothetical definition of sexual harassment that just says, we don't do any investigation, just anybody who's accused gets automatically disciplined, would probably fall into that category of showing an impermissible bias, right? I think if such a policy existed, then yes. Okay, so then the question is, does this policy look like that one? So if this policy says, by unintentionally and accidentally bumping into somebody, you could be guilty of sexual harassment and subject to discipline, doesn't it look a lot like a policy that says we just automatically go from the accusation and don't really care about whether the person engaged in ill conduct? No, if the policy didn't provide for an investigation, didn't provide rights to the accused, didn't provide rights to the accuser, there are all sorts of procedural mechanisms here. Okay, but what are the procedures here that provided rights to the accused? So the only witnesses on his side was himself, right? In that brief 25 minute meeting that he had, right? That was the only witness that he brought. The whole school participated in the program, right? So you could have interviewed lots of witnesses. There could have been students who were interviewed. I think that speaks to the question of what we think of the investigation, which the lower court clearly weighed in on. The question here, though, with regard to the investigation is, was the investigation so deficient that it rises to the level of an inference of gender bias? It's just not. So on that point, we're at the motion to dismiss stage, right? So we have to take all the facts as alleged in the complaint as they are. Maybe you go through discovery, maybe you go through trial and it turns out every fact stated in the complaint is just utterly false and has no grounding in reality, right? Maybe there were 17 witnesses to this conduct and they all said it was intentional, right? But we don't have that before us, we've just got what the plaintiff claims. So don't we have, based on that, some factual claims that there were irregularities here? So for example, I think Mr. Blanchard in his letter says that he contacted, I can't remember where it is, that he contacted, will you tell me where it is? I thought that there was a statement by Mr., yeah, he said he called Mr. Sheeble on June 28th to notify him of the complaint and inform him that the district would be conducting an investigation. The plaintiff specifically, as I recall, specifically denies that, this complainant said that that didn't happen. And that in fact, he was never even notified of the substance of the allegation, it's just that there was a complaint of some unspecified way, right? So that is specifically saying that part of the basis for Blanchard's decision is just a lie. Now maybe it's not, right? Maybe the fact finder would go and look at this and there would be phone records showing that there was a five minute cell phone call between Mr. Blanchard and Mr. Sheeble. And there was a tape recording and that his recollection is wrong, or he's lying in the complaint. But at least for now, we have to accept, would you agree, that that call never happened? And that Mr. Blanchard never told him what his complaint was about, even though he claimed to have done so in his decision, right? I agree that the standard- So how is that not an irregularity? What I would say is the lower court has found, and the district, and the individual defendants did not appeal from the portion of the finding. Well, you don't appeal. Well, we didn't address, with all due respect, we didn't address it here. Okay, so you're not contesting the irregularities, you're only- No, we can't. Well, of course you could, hang on, you can always seek affirmance on any basis that's apparent to record, but you're not, okay. So then let me ask you this, given the fact that we're all then apparently proceeding from the premise that the district court proceeded, that there were in fact procedural irregularities, then the question becomes gender bias. If I could ask you to take a quick minute to address the comments of, again, if I'm going to pronounce it right now, Ms. Dugay? Dugay, yes. Ms. Dugay, when Mr. Sheeble walks into the meeting and she says, my back is against the wall and I have my eyes on the exits, how is that not a manifestation of gender bias by one of the decision makers? So there's a difference, at least in my mind, there is a difference between being biased against someone because of their gender and being biased against someone who's been accused of sexual harassment. So you think she would have said that to a woman who was accused of harassing a man? If the woman was accused of touching an underage male student's genitals? Yes, I do think she would have said that. And well, let me put it this way. You don't think that the plaintiff would have a minimally plausible inference that they could draw, that she would not have said that to a woman who was accused of touching a boy? Because she's a woman, right? Isn't there a minimally plausible inference that can be drawn, saying she is basically identifying with a female student against a male accuser? No, I think she was identifying with an accuser, someone who had been the victim of something and took that approach. If she did so, that doesn't necessarily mean that she's engaged in gender bias, not to mention- There are two males in the room at the time she makes this comment, aside from Mr. Sheevil. So your argument is that she is biased. She just definitely always agrees that accusers are right and accused are guilty. No. So her bias is against people accused of sexual harassment. I would say- And so there is a prejudgment, but it's not based on sex. I would say if there was a bias, that would be the biases in favor of the individual coming forward with the allegation. Okay, so if in fact the inference is that she thinks that the people coming forward with the allegations are telling the truth and the people accused are guilty, that shows prejudgment, right? Not necessarily. I also think- If it did, would that be a problem? I mean, you agreed with me a moment ago that if in fact it could be shown that the school district was just indifferent to the truth or falsity of the allegations, that would be a violation of Title IX. That would be, but- So if the inference from this comment from her is that she thinks that we should always side with accusers and against accused and she has what you're calling an anti-respondent bias, it would show that level of prejudgment, right? That the person charged with investigating this just didn't care whether the accused person was guilty or innocent. No, I think we're ignoring some other facts of the matter, which is that this was an already begun to form based on the investigation that had occurred to that point. But this was also before the accused, Mr. Scheibel, had even been informed of the allegations against him, right? This was the meeting at which he was informed of the allegations against him, so this is before she heard any defense from him, right? Maybe she had talked to some other witnesses or whatever, but she had never heard anything from his side. Well, she would be, as an investigator, entitled to at least begin evaluating the facts that have been reported to her to that point. Okay, so you said a moment ago she might have a bias against the accused, but now you're saying, but we should draw the inference that she developed a considered opinion about Mr. Scheibel's guilt or innocence. What I think is at this point, the burden lies with the plaintiff to show that it is in fact gender-based. While the standard is low, the plaintiff's— Okay, well, can I ask about that? So you say that there's a difference between a bias against people accused of sexual harassment and a sex-based bias. Does it work the other way? So if a victim of sexual assault brings a Title IX claim against a school district and says, you know, I filed a complaint that I was sexually assaulted, and the school district did nothing, and in fact, the evidence showed the school district was aware of the accusations of sexual assault and just didn't care, and didn't do an investigation and left the assaulter on campus and didn't care at all, could the school district defend that lawsuit by saying, well, we're not biased against women. We're just biased against complainants. We have an anti-complainant bias. We think people who complain about sexual harassment are always whiners and complainers, and we don't like them, and so we don't investigate accusations of sexual assault. So I think there's a lot of different parts to that. The answer sort of directly would be, the district can certainly say that. I know it can say that. You can say that. Is that a meritorious defense? No. Can the district say, we never investigate any complaints of sexual assault, not because we are biased against women, but because we just don't like people who complain about sexual assault, and therefore, it's not a sex-based bias. If they failed to conduct an investigation and they had a policy that required it, then I don't think that would be a meritorious defense. But you think they could adopt a policy that says, we never investigate complaints of sexual assault? No, that would violate Title IX. OK. So you're saying having the anti-complainant bias would not excuse them from the obligation under Title IX to take the accusation seriously, right? That's correct. So why would it be the case that on the other side, since you agreed with me that being indifferent to the truth or falsity of an accusation and just expelling an accused student would violate Title IX, why would it be a meritorious defense for the school to say, well, it's true, we just expel everybody accused of sexual harassment with that regard to the truth or falsity allegations. But we do that because we don't like respondents, not because we don't like men. Why is an anti-complainant bias not an acceptable defense, but an anti-respondent bias is an acceptable defense? Because the issue here is the plaintiff in this case is alleging a gender bias, not a respondent bias. He must prove, and he must allege, even though the bar is low, he still must allege that there is some evidence of gender bias. And even though the bar is low, the plaintiff hasn't met that bar here. The plaintiff is only alleging a few things, none of which speak to this. You agreed with me that if a school doesn't address sexual assault, it is a violation of Title IX, regardless of whether it's plausible that the university just doesn't like complainants as opposed to women. You don't need a separate allegation to say that they're specifically biased against women as opposed to people who complain about sexual assault. So I guess I just don't understand why that doesn't work both ways. So why would it be the case that if you just automatically expel everyone accused, it's not a sex-based bias because they just might not like respondents? Well, that's... You're saying an anti-respondent bias is acceptable under Title IX, but an anti-complainant bias is a sex-based bias. But your argument for why an anti-respondent bias is not sex-based is because men and women can be respondents, but men and women can be complainants too, right? They can. The law... So why doesn't that also mean that an anti-complainant bias is not a sex-based bias? So in the event that a district elects not to do anything on the grounds that they just don't do anything about claims of sexual harassment, that constitutes separate violations. It shows a deliberate indifference. With regard to respondents here, the problem is it doesn't... It's not an apples-to-apples comparison. The respondent here is not the same as the complainant. And the respondent... There was an investigation here. Whatever we think about what the relative errors made by the investigator, at the end of the day, there was an investigation conducted. That investigation led to a finding. That finding was appealed. So Mr. Schiebel was given the opportunity... Your argument does depend on there being an adequate investigation because you did agree that if it were plausible that the school district was deliberately indifferent to the truth or false accusations and just expelled, that would be a violation of Title IX. Well, yeah. If there's a sham investigation, then of course you can't hide behind a sham investigation. You can't, okay. You can't in any respect. The problem here is that's not what happened. So if I can perhaps paraphrase what I think I'm hearing you argue is we may have all sorts of discussions about whether there could be a deliberate indifference claim against a school district or an educational institution that made a decision to never consider ever the respondent's side of the story. That's certainly not what happened here. If anything, the claim is, yeah, they were considering, but they did a really bad job of it. That would be the claim against you. Not that you agree that the bad job was happened, but that the flaw is not that there was no investigation. The flaw is that this was a deeply flawed investigation. Right. Okay. And you'd agree that if we have a case like Judge Nardini just described in which the flaws are not so great as to amount to deliberate indifference, then the deliberate indifference alone can show sex-based bias. But if the plaintiff has allegations that show bias on the part of the school district, then that would satisfy the requirement, right? Yes. Sex-based pressure or the statements by a decision-maker or that kind of thing. You're just saying the statements by the decision-maker here don't show the sex-based bias. Correct. So that's not even plausible that they would. That is correct, Your Honor. Okay. We have kept you up here, again, like your colleague, quite a long time. We thank you very much. Why don't we hear from Mr. Cook? We are going to keep this to two minutes. I thank the court for their time. Thank you, Your Honor. There are just a few points that I'd like to address. First of all, the point of witnesses was brought up and that there was a witness that the school district failed to listen to that said that she had seen nothing. I want to point out there were more than one witnesses. There were multiple witnesses. There were 10 students that were involved. Well, hang on. There are 10 people who were at the event. We don't know whether they were witnesses. You could say there are 100 people in this courthouse. That doesn't mean they're witness to this oral argument, right? Everybody in this room is, though. Right. You're fighting my hypothetical, right? I said there are 100 people in the courthouse. That doesn't make them all witnesses to what's happening inside the courtroom. That's correct. I guess my point is, why don't you just stick with the allegations that you've got, rather than, I think you've got some arguments here, but once you start arguing that there are other people who really, I think you're arguing, could have been witnesses, but you don't know whether they were witnesses, that's a different argument. The reason we don't know if they were witnesses was because the school district refused to interview them. They didn't even give him a chance to say, these are witnesses that you should interview that may have seen this. That argument I understand. Yeah. To say we don't know who the witnesses are, and there was a procedural irregularity in that they ought to have determined whether they were different witnesses. But again, you can hear me, but the argument's me. And at least given him an opportunity. Thank you, Your Honor. I appreciate that. They at least should have given him an opportunity to say, there are other witnesses that I think you should interview. Didn't even give him that. Although I should add that in his complaint, he does not allege that there were other particular witnesses that he would have identified. Now that he knows what the claims are, I don't think. Did he say, had I been given an opportunity, I would have identified witnesses ABC? I believe that he did. But even if he didn't, that's something that we should have been permitted to amend and sufficiently. Did you ask for it? Say that again? Did you ask for it? We did. Yeah. And in the brief below, we said if the court doesn't agree with our points, then we should be permitted to amend. I have a question in terms of the phone call on June 28th, or whether it took place or not. My understanding is in your complaint, you did, your client said that he did call, I contacted Blanchard to find out what was going on. And then when he talked to him, he said, because Blanchard had left a voicemail saying that he wanted to talk to him. And then apparently he wasn't responsive. He wasn't there when you try and call him a few times. But then when he did call him, I think your client said he did call him. And all he said was a student felt uncomfortable. And that was the end of the conversation. It wasn't as though your client said he never had that conversation. There was a conversation, but it just, that's as far as it went. He asked for, I'm out of time. Can I answer that question? No, please answer the question. There was a conversation. He did not, but what he did was he asked for information. What is it that I'm being accused of? Can you tell me what the complaint actually was? And that was what they didn't give him. Right. But there was a statement by Blanchard that a student had reported that she felt uncomfortable. That was all it was. But that was it. Correct. But no further explanation of that. And also, what do you make of the fact that her mother, who reported the incident the next day, withdrew the complaint? How does that bear in this case at all? Does it talk to, does it bear on the question of it being an act? It could have been accidental, and therefore the student didn't want to make any more of it, the mother didn't want to make any more of it, and then the school just took over. Does that matter in this case in any way? May I answer the question? Any questions. Okay. Well, a couple of things that I would say to that. It is true that a school district still has an obligation to investigate. And we're not arguing that the mother saying, I don't want to make a formal complaint, that that by itself means that they shouldn't have done anything. But I think it does indicate the weakness of the accusation. And that in the whole totality of the allegations, it helps support the fact that it was- I mean, that's really, that seems like awfully thin skating. I mean, isn't that the typical thing, I think, in domestic abuse cases? You know, the typical victim won't go to the police, doesn't want to go forward, doesn't want the shame of the allegation, doesn't want an investigation that involves them, doesn't want to relive the trauma. It seems to me there's so many inferences that could be drawn one way or the other from that. That's right. And it seems very thin skating to suggest that the mother indicating, as I understand your complaint, that she did not want the matter to proceed any further. Right. I don't see how you could infer from that that it is because the mother thought it was not an actual incident. I want to be very clear about what the mother actually reported. It was not that the student had been touched. It was, my daughter doesn't want to come to school today because she felt uncomfortable around a man yesterday. That was it. And then after the Title IX investigator went and coaxed the student to try to come up with an accusation, that's when we heard things about touching. So I think that the way it progressed from merely making her feel uncomfortable to now there's touching to all of a sudden now it's full on sexual harassment, that does indicate the level of bias. And I agree that that doesn't prove it by itself. But at the pleading stage where we have to draw the inferences in my client's favor, I think it meets the minimum plausibility standard. Okay. Thank you both very much. Thank you very much, Your Honor.  Thank you, Your Honor.